# White *v.* The Pennsylvania Railroad Company.

*Railroads—Eminent domain—Bridges—Navigable streams—Flooding lands—Compensation.*

1. A franchise granted by the commonwealth for the erection of a bridge over a stream the bed of which is exclusively in the commonwealth carries with it the right to use the bed of the stream for the necessary piers but it does not and cannot exempt the party exercising the franchise from liability for injury to property belonging to private parties occasioned by the bridge, as a structure causing the flooding of their lands, and this is so whether the piers are located partly on the land condemned or all in the bed of the stream. When land is flooded by the erection of a bridge over a navigable stream by a railroad company, and its value thereby impaired, it is in effect a taking of the land itself and, as for any other taking of land for public use, compensation is the condition.

*Evidence—Witness—Market value—Productiveness of land—Condemnation—Railroads.*

2. A witness called on behalf of the plaintiff in a condemnation proceeding to testify to the market value of plaintiff's farm, who repeatedly admits in his preliminary examination that he has no familiarity with the market value of land in the neighborhood and when testifying in chief as repeatedly says that the estimate he gave was not a market value but a value based on what he thought the farm would produce, is clearly incompetent and it is error not to exclude his testimony.

Argued Oct. 10, 1910. Appeal, No. 115, Oct. T., 1910, by defendant, from judgment of C. P. Indiana County, Sept. T., 1906, No. 160, on verdict for plaintiff in case of James H. White, Jr., v. The Pennsylvania Railroad Company. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Appeal from the award of a jury of view.   Before TEL-FORD, P. J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $8,683, and judgment thereon.

*Errors assigned* were (1–3) and (5–7) rulings on evidence; (4) refusal of court to strike out estimate of market value of plaintiff's farm made by Robert Nesbitt; and (8–10) various instructions of the court.

*J. N. Banks,* with him *Samuel Cunningham* and *J. S. Fisher,* for appellant.—Where a railroad company exercises its right of eminent domain on lands not that of the complainant, and does it in a lawful manner without negligence or malice, there can be no recovery for injuries: Braine v. Northern Cent. Ry. Co., 218 Pa. 43; Jutte v. Keystone Bridge Co., 146 Pa. 400; Berninger v. Sunbury, etc., R. R. Co., 203 Pa. 516.

Supposed profits from conducting a farm is not proper matter upon which to base value: Cox v. Phila., H. & P. R. R. Co., 215 Pa. 506.

*M. C. Watson,* with him *Elder Peelor* and *George J. Feit,* for appellee.—The principle of Mellor v. Phila., 160 Pa. 614, governs this case.

OPINION BY MR. JUSTICE STEWART, January 3, 1911:

The plaintiff is the owner of a tract of land in Indiana county bordering on the Conemaugh river.   With a view to straighten and otherwise improve its line of road, the defendant company appropriated by condemnation proceeding something over four acres of this land.   At this point the defendant company constructed a bridge for its roadbed over the river.   The near abutment and two of the piers rested on the land which had been appropriated, the second pier being near the low water lines; the other piers, four in number, rested on the bed of the river.   Evidence was offered by the plaintiff and ad-

mitted, tending to show that the erection of the bridge had changed the current of the river; that whereas, before this obstruction to the flow was placed there, the current was against the opposite bank, it is now in consequence of the obstruction turned in the direction of plaintiff's land, with the result that in stages of high water and ordinary freshets a considerable part of plaintiff's land is flooded and otherwise injured. This circumstance was claimed and allowed as an element of damage to be considered by the jury, provided they found the facts to be as above stated. The assignments of error, excepting one to be considered later, all relate to this ruling. The company's contention is, first, that it is exempt from liability for injury resulting from the erection of the bridge, inasmuch as the structure was erected pursuant to a franchise from the commonwealth over a stream the bed of which was in the commonwealth exclusively; and, second, that if liable at all, it can only be for such consequences as are shown to have resulted from so much of the bridge structure as rests upon the plaintiff's land. The state's participation in the matter does not affect the case in the least. The franchise granted the defendant company carried with it a right to use the bed of the stream for the necessary piers; but it did not and could not exempt the party exercising the franchise from liability for injury to property not belonging to the state but to private parties, occasioned by the bridge. The cases are numerous in which this court has held that the rights of the railroad company to build a bridge across a stream, includes the right to place necessary piers on its bank and in its bed; and that for the proper exercise of this right there is no liability; the most recent of these cases being Braine v. Northern Cent. Ry. Co., 218 Pa. 43, in which the earlier cases are cited. But this exemption extends no further than to relieve from liability for such interference with ordinary and natural conditions in and upon the stream, as affects the rights of the public in the stream, or the rights of riparian owners to access

to the stream. An examination of the cases referred to will show that in every one of them the subject of the injury complained of was within the proper limits of the stream. In several the injury was to boats or barges; in others the matter complained of was interference with the right of access, or with a privilege exercised in connection with the stream under grant. Any such doctrine as here contended for would violate constitutional safeguards with respect to the ownership of private property. When land is flooded by the erection of a bridge over a navigable stream and its value thereby impaired, it is in effect a taking of the land itself, and for any taking of land for public use, compensation is the condition. The flooding of land continuously, or even intermittently, caused by the construction of a dam or of other erections for public use, is a taking which requires compensation: Pumpelly v. Green Bay Co., 80 U. S. 166. The right to flood the land of any one by the erection of piers in the bed of a stream, can only be adversely acquired as land itself is acquired, by giving or securing compensation to the party who would be injured thereby. Were this not so, a company having acquired a right from the state to erect and maintain a bridge over the stream—a right which necessarily carries with it the right to determine the character, number and location of the piers: Braine v. Northern Cent. Ry. Co., 218 Pa. 43—might so obstruct the flow of the water with its bridge as to overflow a riparian owner's land, not occasionally but constantly, in a way destructive of its value, and leave the owner remediless. That is not the law. What we have said is in answer to the second contention of the defendant as well. If none of the piers were on the condemned land, but all on the bed of the river, the defendant would nevertheless be liable for whatever injury the bridge as a structure worked to the plaintiff in the way of flooding his land. The evidence with respect to this was properly admitted.

The other assignment is better supported. The wit-

ness, Robert Nesbitt, called on behalf of the plaintiff to testify to the market value of the plaintiff's farm, was clearly incompetent, and his testimony should have been excluded. Not only did he repeatedly admit in his preliminary examination that he had no familiarity with the market value of land in the neighborhood, but when testifying in chief he as repeatedly said that the estimate he gave was not a market value, but a value based on what he thought the farm would produce. When asked how he arrived at the market value, his reply was that he·did not believe it right to consider market value; that he had his own notion as to what this land was worth, and was not governed by outside sales; that he estimated it from its earnings capacity, and that he could not confine himself in his estimate to market value. Thus the one standard by which the law measures damages in cases of this kind was distinctly repudiated by the witness. It was error to allow him to testify, and having testified not to a market value but to a value based on mere productiveness, his testimony should have been withdrawn from the jury. This assignment of error is sustained and judgment is reversed with a venire facias de novo.