Argued February 20, affirmed June 1, reconsideration denied July 21, petition for review denied August 3, 1976

## WILLARD et ux, *Appellants,*

*v.*

## CITY OF EUGENE, *Respondent.*

## (No. 73-4769, CA 4832)

550 P2d 457

*R. Scott Taylor,* Veneta, argued the cause for appellants. With him on the briefs were Taylor and Taylor, Veneta.

*Richard Roseta,* Eugene, argued the cause for respondent. On the brief were Jaqua & Wheatley and John E. Jaqua, Eugene.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

## FORT, J.

Plaintiffs brought an action in inverse condemnation against the City of Eugene. The trial court sustained the city's demurrer to plaintiffs' third amended complaint on the ground that it did not state facts sufficient to constitute a cause of action. Plaintiffs' appeal presents the question whether an alleged wrongful abatement of property as a nuisance gives rise to a cause of action in inverse condemnation.

In their final complaint plaintiffs alleged that they owned a house in Eugene, that in January 1970 the city council ordered the destruction of the house, and that during March 1970 the house was demolished, all without the plaintiffs' consent or knowledge. Plaintiffs then alleged:

> "Plaintiffs' property herein above mentioned was destroyed and taken by Defendant for the public purpose of eradicating a dangerous building which the Defendant felt presented a fire and health hazard."

Plaintiffs' only allegation that the abatement of their house was wrongful was that the demolition was done without their knowledge. Under ORS 16.120, requiring liberal construction of pleadings, we find that this allegation is sufficient to raise for trial the issue whether the abatement was done with proper notice. It does not answer the question whether a wrongful abatement gives rise to a cause of action for inverse condemnation.

An action for inverse condemnation is based on Article I, Section 18 of the Oregon Constitution, which states:

> "Private property shall not be taken for public use * * * without just compensation * * *."

This provision limits the state's inherent power of eminent domain so that it may take private property only for a public use and it must pay compensation for the property it takes. *Smith v. Cameron,* 106 Or 1, 8-9, 210 P 716, 27 ALR 510 (1922). In an action for inverse

[ 493 ]

condemnation the property owner alleges that the state has taken his property without compensation.

The demurrer was sustained on the basis of defendant's contention that to state a cause of action in inverse condemnation plaintiffs were required to allege facts sufficient to show that the property was taken for a public use and that they had not done so. On appeal, plaintiffs contend that such an allegation of public use is not required or, in the alternative, that their allegation of a wrongful abatement of their property is sufficient to state a public use.

■■ Plaintiffs claim a constitutional right to compensation. We conclude that Oregon Constitution, Art I, § 18, as well as the Oregon cases, requires that in order to state a cause of action in inverse condemnation plaintiff must allege facts sufficient to show his property or an interest therein was taken for a public use. A right of action in inverse condemnation is linked to the state's power of eminent domain:

> "* * * [W]here the state exercises its power of eminent domain without bringing an action to condemn, the owner of the property taken may himself go into court and sue to recover its value and certain damages; for to deny him this right would be to deprive him of the protection guaranteed by Article I, Section 18 of the state constitution. * * *" *Cereghino v. State Highway Com.,* 230 Or 439, 444, 370 P2d 694 (1962).

Since the state may exercise its power of eminent domain only for a public purpose (*Smith v. Cameron, supra*), inverse condemnation actions may be brought only where the state has taken property for a public use.

This requirement was set forth in *Tomasek v. Oregon Highway Com'n,* 196 Or 120, 248 P2d 703 (1952):

> "To support an action for compensation or damages such as we have here, three things must concur and combine; viz., (1) there must be a taking of private property for a public use by (2) a state agency authorized to exercise the power of eminent domain, and (3) it must be

property that is subject to being taken for a public use. * * *" 196 Or at 147.

We now turn to the question whether an improper abatement, such as plaintiffs have alleged, constitutes public use. Plaintiffs agree that an abatement of their house as a nuisance according to proper procedure would have constituted an exercise of the city's regulatory or police power and would not be a taking for public use. The two powers are distinguished as follows: under its eminent domain power the state may acquire property for the use and benefit of the public; under its police power the state may regulate or restrict activities or use of property which are harmful to the public. 11 McQuillin, Municipal Corporations 276, § 32.04 (3d ed rev 1964); 1 Nichols, Eminent Domain 1-104, 1-123, §§ 1.42, 1.42[2] (3d ed rev 1975).

The plaintiffs' complaint alleges that the city was attempting to regulate a harmful use or activity on plaintiffs' land. There is no allegation that the city acquired any right or thing that the public could use or that its actions in removing the house were related to or in pursuance of its eminent domain power. We conclude that an action for inverse condemnation will not lie under the facts here alleged.

Plaintiffs contend that their situation is analogous to those of other Oregon cases in which inverse condemnation has been upheld. We disagree. The leading Oregon cases in which a cause of action in inverse condemnation has been found involve situations in which the state had been conducting an activity for the public benefit in pursuit of which it had exercised or could have exercised its eminent domain powers. In each of those cases the plaintiff's property was located on the fringes of that activity and was seriously affected by it. In *Tomasek v. State Highway Com'n, supra,* and in *Morrison v. Clackamas County,* 141 Or 564, 18 P2d 814 (1933), the governing body had built a bridge or a jetty to protect a bridge with resulting changes in river currents which led to flooding and destruction of the plaintiffs' lands. In *Cereghino v.*

*State Highway Com'n, supra,* the relocation of a high-way had resulted in similar flooding, silt deposits, and washing away of topsoil. In *Thornburg v. Port of Portland,* 233 Or 178, 376 P2d 100 (1962), the plaintiffs were held to have stated a cause of action when they alleged that because of continuing noise, the defendant's airport operation was extending its ownership rights beyond the property actually condemned and was acquiring an easement by prescription over plaintiffs' land. And, most recently, in *Lincoln Loan v. State Hwy. Comm.,* 274 Or 49, 545 P2d 105 (1976), plaintiff was held to have stated a cause of action in inverse condemnation when it alleged that defendant's highway construction activities in connection with its property over a ten-year period constituted a taking. These activities included instituting condemnation proceedings, causing noise, demolishing nearby buildings, and notifying tenants that they must move and that their moving expenses would be paid.

The plaintiffs' situation here is not analogous to those cases, all of which involved extensions of eminent domain activity. We conclude that no exercise of any eminent domain power was alleged or involved in the removal of the house by the city here.

While the plaintiffs may have stated a cause of action in tort against the city, ORS 30.275(3) waives sovereign immunity only if the action is filed within two years of the injury. The plaintiffs filed this action nearly four years after the alleged demolition of their house. The demurrer was correctly sustained.

Affirmed.

**THORNTON, J.,** specially concurring.

I concur in the result but do so for a different reason.

In my view the vice of plaintiffs' complaint is that plaintiffs have not alleged a wrongful taking of their property, except that the taking was without plain-

tiffs' knowledge. Plaintiffs allege that the taking was "without Plaintiff's consent or knowledge." Also plaintiffs allege:

"Plaintiffs' property herein above mentioned was destroyed and taken by Defendant for the public purpose of eradicating a dangerous building which the Defendant felt presented a fire and health hazard."

But neither of the above would, in my view, constitute a sufficient allegation that the taking was wrongful. In the absence of such an allegation defendant's demurrer must be sustained.

Secondly, I cannot agree with the implication of the prevailing opinion that the wrongful destruction of a building by a governmental entity under the mistaken belief that it is a nuisance cannot constitute a taking for a "public use."

In his treatise on eminent domain, Nichols states:

"* * * In all such cases [where governmental entity abates an alleged nuisance] the owner is entitled to a hearing at some stage of the proceedings on the question whether his property was, in fact, a nuisance, and if it was not, he is entitled to compensation for its destruction. It may well be a reasonable method and necessary for the public health to destroy first and investigate afterward; but if sound and valuable property is destroyed as a result of such necessity, it is taken for the public use in the constitutional sense and the owner is entitled to compensation. * * *" 1 Nichols, Law of Eminent Domain 1-230, § 1.42[15] (3d ed rev 1975).

The case of *McMahon v. Telluride,* 79 Colo 281, 244 P 1017 (1926), is directly in point. *See,* Annotation, 46 ALR 358 (1927). In that case, after the city council declared plaintiff's building to be a nuisance, he moved it to a different part of his property and made substantial repairs to it. The city then destroyed the building. Plaintiff brought an action based on inverse condemnation, the trial court granted the city a nonsuit, and plaintiff appealed to the Supreme Court of Colorado, which held:

"Abatement of nuisances is a governmental function.

[ 497 ]

* * * No liability can arise against a municipality for the destruction of property which is a nuisance, but it must be a nuisance in fact. * * *

"Where the property is not in fact a nuisance, if the city is not liable in tort * * * the municipality is nevertheless liable upon the theory that it must grant compensation for private property that it takes for public use. If certain property is in fact a nuisance, its destruction as such may not give rise to any right to compensation, but *if property is destroyed under a mistaken belief that it is a nuisance, when in fact it is not a nuisance, it is taken for a 'public use' within the meaning of the constitutional provision,* and the loss to the owner should be made good. * * *" 79 Colo at 284, 244 P at 1018. (Emphasis supplied.) *Accord: Miles v. District of Columbia,* 354 F Supp 577 (1973).

Finally, I am likewise not in accord with the implication in the prevailing opinion that acts done under the so-called "police power" cannot amount to a taking for which compensation is required by Art I, § 18, Oregon Constitution. Whether the source of the governmental authority involved is labeled "police power" or "power of eminent domain" should not be controlling in determining whether compensation is required, since the two are not always separate and distinct but instead often overlap. *See,* 1 Nichols, *supra* at § 1.42[1].