Argued and submitted March 4, decision of the Court of Appeals affirmed July 22, reconsideration denied September 21, 1993

Thomas DODD,
Doris Dodd, and Oregonians in Action,
*Petitioners on Review,*

*v.*

HOOD RIVER COUNTY;
Oregon Department of Fish and Wildlife;
Oregon Department of Land Conservation
and Development;
Oregon Department of Forestry;
and 1000 Friends of Oregon,
*Respondents on Review.*

(LUBA 91-116; CA A73984; SC S39683, S39684)

855 P2d 608

Richard M. Stephens, of Pacific Legal Foundation, Bellevue, Washington, argued the cause and filed the petition for petitioners on review Thomas and Doris Dodd.

David B. Smith, Tigard, argued the cause for petitioner on review Oregonians in Action. With him on the petition was Dorothy S. Cofield, Tigard.

Teunis Wyers, Hood River, argued the cause for respondent on review Hood River County.

Robert Liberty, Portland, argued the cause for respondent on review 1000 Friends of Oregon. Peter Livingston, Portland, filed the response for 1000 Friends of Oregon.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondents on review Oregon Department of Fish and Wildlife, Oregon Department of Land Conservation and Development, and Oregon Department of Forestry. With him on the response were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Daniel J. Popeo and Paul D. Kamenar, of the Washington Legal Foundation, Washington, D.C., and Gregory S. Hathaway, of Garvey, Schubert, & Barer, Portland, filed a brief *amicus curiae* for the Washington Legal Foundation.

Lawrence Watters, Counsel, Columbia River Gorge Commission, White Salmon, Washington, and Teunis Wyers, Hood River, filed a brief *amicus curiae* for the Columbia River Gorge Commission.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Hood River County (the county) denied Thomas and Doris Dodd's (petitioners) application for a conditional use permit to build a single-family dwelling in a forestry zone.[1] The Land Use Board of Appeals (LUBA) affirmed. *Dodd v. Hood River County*, 22 Or LUBA 711 (1992). The Court of Appeals also affirmed. *Dodd v. Hood River County*, 115 Or App 139, 836 P2d 1373 (1992).

The issues before this court are (1) whether LUBA's findings are supported by substantial evidence in the record; (2) whether petitioners' property has been "taken" by the county under Article I, section 18, of the Oregon Constitution;[2] and (3) whether the county has taken a "conservation easement"[3] in petitioners' property. On review, pursuant to ORS 197.850(9),[4] we affirm.

---

[1] Throughout this opinion we will refer to the Dodds as petitioners, although intervenor Oregonians in Action on the Dodds' behalf is one of the petitioners on review. We will refer to Hood River County as the county, noting that the Oregon Departments of Fish and Wildlife, Land Conservation and Development, and Forestry, and 1000 Friends of Oregon have intervened as respondents. For the sake of simplicity, we will refer generically to "petitioners' arguments" and "respondents' arguments" to include those made by the original parties as well as the intervenors.

[2] Article I, section 18, of the Oregon Constitution, provides in part:

"Private property shall not be taken for public use * * * without just compensation; nor except in the case of the state, without such compensation first assessed and tendered[.]"

Petitioners claim to be reserving their right to have any claims that they might wish to make under the federal constitution determined in federal court. This case, therefore, presents only issues of Oregon law.

[3] ORS 271.715(1) provides the following definition:

" 'Conservation easement' means a nonpossessory interest of a holder in real property imposing limitations or affirmative obligations the purposes of which include retaining or protecting natural, scenic, or open space values of real property, assuring its availability for agricultural, forest, recreational, or open space use, protecting natural resources, maintaining or enhancing air or water quality, or preserving the historical, architectural, archaeological, or cultural aspects of real property."

ORS 271.725 provides in part:

"(1) The state, any county, city or park and recreation district may acquire by purchase, agreement or donation, but not by exercise of the power of eminent domain, unless specifically authorized by law, conservation easements in any area within their respective jurisdictions wherever and to the extent that a state agency or the governing body of the county, city or park and recreation district determines that the acquisition will be in the public interest.

"(2) Except as otherwise provided in ORS 271.715 to 271.795 and 390.805, a conservation easement * * * may be created, conveyed, recorded, assigned,

In 1983, petitioners purchased 40 acres of land in Hood River County's F-1 (forest) zone for $33,000, intending eventually to build a dwelling there for use after their retirement. At that time, the zoning of the land permitted construction of a dwelling.[5] However, the county was then in the process of revising its comprehensive plan to bring the plan into compliance with the Land Conservation and Development Commission's (LCDC) Statewide Planning Goals. In December 1984, the county's ordinance was amended to conform to LCDC Goal 4. As amended, the ordinance prohibited construction of dwellings on F-1 (forest) zone land of 40 acres and larger, unless such dwellings were "necessary and accessory to a forest use."[6]

In 1990, petitioners filed with the county a consolidated application for a land use permit, conditional use permit, and a zone and comprehensive plan change to erect a dwelling on their land. Finding that petitioners' proposed

---

released, modified, terminated, or otherwise altered or affected in the same manner as other easements."

[4] ORS 197.850(9) provides:

"The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(a) The order to be unlawful in substance or procedure, but error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby;

"(b) The order to be unconstitutional; or

"(c) The order is not supported by substantial evidence in the whole record as to the facts found by the board under ORS 197.830(13)."

[5] The record does not disclose whether petitioners paid fair market value for their property or whether, as the state suggests, "the Dodds may have paid too much for the property."

[6] The restrictions on land zoned F-1 in Hood River County are set out in Section 5 of the Hood River County Zoning Ordinance. The purpose of that zone is stated as follows:

"The Forest (F-1) Zone is established to designate and reserve areas for the purpose of maintaining renewable forest resource production, retention of watershed productivity, recreation and other compatible uses.

"It is the purpose of this zone to discourage land use incompatible with the management and development of forest resources in order to maximize forest resource production and to minimize the possibilities of damage from fire, pollution and conflict caused by urbanization. It is further intended to retain sensitive land and water resources. Overall the zone is intended to meet the requirement of [LCDC Statewide Planning] Goal #4." Hood River County Zoning Ordinance § 5.00.

dwelling was not "necessary and accessory to a forest use," the county denied petitioners' application. Petitioners appealed to LUBA.

Before LUBA, petitioners argued (1) that the county's findings were not supported by substantial evidence in the record, (2) that the county's action was a "taking" of their land in violation of Article I, section 18, and (3) that the county had taken a "conservation easement" in their land in violation of ORS 271.725. The evidence before LUBA included a report prepared by petitioners' expert, concluding that petitioners' land was worth only $691 if it was unbuildable.[7] The Oregon Department of Forestry reviewed petitioners' expert's report and concluded that its forest capability predictions were inconsistent with the department's data and that the projected figures were not based on the productive potential of petitioners' land. The county's forester surveyed petitioners' land and estimated that 24 acres could be used for timber production and that the amount of timber on petitioners' land was almost three times as much as had been estimated by petitioners' expert. The forester concluded that, even after deducting reforestation costs, petitioners could get at least $10,000 from the sale of the timber on their land alone.

LUBA found:

"It appears that the property has some limitations for forest use, but can produce a net profit if properly managed for timber production. The limited value of the existing timber as well as the lesser value ascribed to the future timber production potential of the property by petitioners' expert appears to have as much to do with past deficiencies in forest management and limited forest management projected in

[7] Petitioners' expert reported that more than half of petitioners' land was not suitable for timber growth. He estimated that the land could not be reforested economically with merchantable conifers. The evidence before LUBA also contained this expert's conclusions to the same effect before the Hood River County Planning Commission at a public hearing on petitioners' application. At that hearing, a commission member challenged those conclusions, noting, based on his personal experience and observation, that he had seen merchantable timber on a portion of petitioners' land that the expert claimed had no timber and that the expert's reforestation cost projections were "much too high." The commission member concluded that, from a forestry point of view, petitioners' land was not as represented by their expert.

the future, as with the inherent limitations of the property."
*Dodd v. Hood River County, supra,* 22 Or LUBA at 732.

LUBA affirmed the county's decision, concluding that the denial did not constitute a "taking" under Article I, section 18. *Id.* at 711. Petitioners sought judicial review in the Court of Appeals.

The Court of Appeals affirmed LUBA's decision, stating that petitioners had lost nothing except the ability to build a dwelling, and nothing was obtained by anyone else. The court stated that the only question petitioners could present was "whether the denial amounted to a regulatory taking under the standard articulated in *Fifth Avenue Corp.* [*v. Washington County,* 282 Or 591, 609, 581 P2d 50 (1978) (property is not taken where zoning regulation allows landowner some 'substantial beneficial use' of property)]." 115 Or App at 142-43. The court held that LUBA's conclusion from the record — that the forest use petitioners may conduct on their property had a potential value of at least $10,000 — was enough for "a substantial beneficial use of the property to exist." *Id.* at 143. The court rejected petitioners' argument that, because dwellings are permitted on other parcels in the same zone, the county's regulation does not advance a legitimate governmental interest:

> "The law of non-conforming uses is well-established in Oregon, and it promotes the value of allowing owners to continue uses of property that were lawful when they were established but that later legislation would restrict or preclude. Petitioner[s'] * * * argument seems to posit that the government cannot have more than one legitimate interest that has some bearing on the same object. There is nothing inconsistent in the simultaneous protection of pre-existing property rights and of resources that are the subject of new regulation." 115 Or App at 143-44.[8]

---

[8] We do not understand petitioners to argue that the county's ordinance does not substantially advance *any* legitimate governmental interest. The Supreme Court of the United States has made it clear that a broad range of governmental purposes and regulations will satisfy the requirement. *See, e.g., Keystone Bituminous Coal Assn. v. DeBenedictis,* 480 US 470, 486, 107 S Ct 1232, 94 L Ed 2d 472 (1987) (protection and enhancement of surface lands, public safety, drainage, and public water supplies are legitimate governmental interests).

In sum, the Court of Appeals rejected all of petitioners' assignments that challenged LUBA's ruling on the Article I, section 18, issues. *Id.* at 144. We allowed review.

■ On review, petitioners argue (1) that LUBA's findings of fact are not supported by substantial evidence in the record, (2) that LUBA erred in concluding that their land was not "taken" by the county in violation of Article I, section 18,[9] and (3) that LUBA erred in concluding that the county had not taken a "conservation easement" in their land.[10]

■ Petitioners first argue that substantial evidence does not support a finding that their property is worth more than $691, the current net value of the property established by petitioners' expert. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding. ORS 183.482(8)(c); *Younger v. City of Portland*, 305 Or 346, 351-52, 752 P2d 262 (1988). The "substantial evidence" inquiry necessarily is case specific. *Reguero v. Teacher Standards and Practices*, 312 Or 402, 417-18, 822 P2d 1171 (1991).

■ LUBA apparently concluded, based on the record, that there existed substantial evidence for finding that

---

[9] Although acknowledging that their federal constitution claims are proceeding separately in federal court, petitioners urge this court to consider recent federal taking case law in interpreting Article I, section 18, of the Oregon Constitution.

[10] Petitioners also argue that, although preservation of forest land for forest use may constitute a legitimate governmental interest, the prohibition on building a home on their property does not advance that interest. Petitioners state that, because the county has allowed homes on smaller parcels, the county recognizes that homes in the forest zone do not interfere with forest uses. We note, however, that there is substantial evidence in the record that the county's interests include preventing forest fires in the forest zone, most of which are caused by human inhabitants.

A nonconforming use is one that lawfully existed before the enactment of a zoning ordinance and that may be maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area. *Clackamas Co. v. Holmes*, 265 Or 193, 196-97, 508 P2d 190 (1973). The parcels to which petitioners compare their land are permitted to have homes, either because those homes preexisted the enactment of the county's ordinance at issue here or because they are smaller than 40 acres and, thus, are not subject to the ordinance's "necessary and accessory to a forest use" standard. Those parcels, therefore, are not comparable to petitioners' land.

We have considered petitioners' other contentions and arguments and find them to be unpersuasive.

petitioners' property (or the timber on that property) had a potential value of at least $10,000. Petitioners argue that the evidence of the state Department of Forestry and the county's forester is merely "junk science," and they assert that acceptance of that evidence is contrary to this court's admonition in *1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384, 405, 752 P2d 271 (1988), that a "county cannot expect that any unsupported assertion that is entered in the record can be used to justify a planning decision." *1000 Friends*, however, involved mere assertions in a letter from a representative of a land owners association, and "nothing in the letter [indicated] that the author or the association had background or evidence to support the assertions." *Id.* at 404. The evidence in this case was far more substantial.

According to the Department of Forestry, citing a USDA Soil Conservation Service study of Hood River County from 1981, petitioners' expert's estimate was incorrect. The county's forester based his estimate on a review of the area from the ground and from aerial photographs. He made detailed findings about the timber on petitioners' land, as well as conclusions as to its value. His estimate of value was based on recent timber sales in Hood River County, and he provided specific information about those sales. He estimated that there are 24 acres that could be used for forest production.

LUBA's evaluation of the "substantiality of evidence supporting a decision must consider all the evidence in the record." *Younger v. City of Portland, supra*, 305 Or at 358. LUBA considered the information presented by petitioners' expert, as well as that provided by the county. LUBA used all that information in concluding that petitioners' land "has some limitations for forest use, but can produce a net profit." *Dodd v. Hood River County, supra*, 22 Or LUBA at 732. We conclude that the record, viewed as a whole, would permit a reasonable person to make that finding and, therefore, that substantial evidence supported LUBA's factual findings.

■■ Petitioners next argue that the county has "taken" their land under Article I, section 18, because it no longer has any substantial beneficial use. Relying on language in *Suess Builders Co. v. City of Beaverton*, 294 Or 254, 656 P2d 306 (1982), and *Fifth Avenue Corp. v. Washington County, supra*, petitioners assert that this court has interpreted Article I,

section 18, to provide less protection of private property than currently is provided by the Fifth Amendment.[11] They urge this court to "recast" its Article I, section 18, "takings" analysis in order to provide greater protection under the state constitution. As noted, *supra*, note 2, petitioners make no federal constitutional claims in this case. In *Suess Builders*, this court stated:

> "Although the basic thrust of the fifth amendment and art I, § 18, is generally the same, * * *, the criteria of compensable 'taking for public use' under art I, § 18, are not necessarily identical to those pronounced from time to time by the United States Supreme Court under the fifth amendment." 294 Or at 259 n 5 (citations omitted).

■        Petitioners and the county have relied on the following test found in *Fifth Avenue* to determine whether there has been a taking in this case under Article I, section 18:

> "[E]ven if planning or zoning designates land for a public use and thereby effects some diminution in value of his land, the owner is not entitled to compensation for inverse condemnation unless: (1) he is precluded from *all economically feasible private uses* pending eventual taking for public use; or (2) the designation results in such governmental intrusion as to inflict virtually irreversible damage." 282 Or at 614 (emphasis added).

That test, however, is to be applied only in cases where the zoning decision is made in contemplation of the eventual taking of private property for public use. Unlike both *Suess Builders* and *Fifth Avenue*, this case does not involve an eventual taking of property for public use. Rather, this case involves zoning regulations that expressly limit the uses that may be made of petitioners' property. In such a case, *Fifth Avenue* recognized a different test:

---

[11] The "takings" clause of the Fifth Amendment to the Constitution of the United States provides:

"[N]or shall private property be taken for public use, without just compensation."

That clause is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Penn Central Trans. Co. v. New York City*, 438 US 104, 122, 98 S Ct 2646, 57 L Ed 2d 631 (1978); *see Lucas v. South Carolina Coastal Council*, 505 US ____, 112 S Ct 2886, 120 L Ed 2d 798 (1992); *see also* Annot, *Supreme Court's View As to What Constitutes a "Taking" Within Meaning of Fifth Amendment's Prohibition Against Taking of Private Property For Public Use Without Just Compensation*, 89 L Ed 2d 977 (1988).

"[T]he trial court's ruling, based on the fact that the complaint showed on its face that the 'down zoning' involved did not deprive plaintiff of all substantial beneficial use of its property, was correct. Where a zoning designation allows a landowner *some substantial beneficial use* of his property, the landowner is not deprived of his property nor is his property 'taken.' Such a loss, if any, is 'damnum absque injuria.' " 282 Or at 609 (emphasis added).

Because this case does not involve a taking for public use, we decline to review the federal "taking for public use" cases relied on by petitioners to determine whether the state or the federal constitution offers a property owner greater protection.[12] We conclude that the county and LUBA applied the proper test in this case, *i.e.*, whether the county's zoning ordinances allowed petitioners "some substantial beneficial use" of their property.

We next consider petitioners' argument that the extent to which a regulation has interfered with "investment-backed expectations" is relevant to any takings analysis. Petitioners rely on *Lucas v. South Carolina Coastal Council*, 505 US ____, 112 S Ct 2886, 120 L Ed 2d 798 (1992) as support for that proposition.

In *Lucas*, the plaintiff purchased land for residential development, but the state's later enactment of a Beachfront Management Act rendered the plaintiff's land valueless *by*

---

[12] Petitioners have made an argument that the forest zoning constitutes a "taking for public use." That argument lacks merit. This court has held that "[r]egulation in pursuit of a public policy is not equivalent to taking for a public use, even if the regulated property is land." *Suess Builders v. City of Beaverton*, 294 Or 254, 259, 656 P2d 306 (1982). The "taking for public use" cases involve zoning regulations that are made with an eye to later acquiring the property for public uses, such as parks. In the present case, petitioners do not argue that the county has any plans to physically acquire their land.

In *Dolan v. City of Tigard*, 317 Or 110, 118, 854 P2d 437 (1993), this court stated:

"A land-use regulation does not effect a 'taking' of property, within the meaning of the Fifth Amendment prohibition against taking private property for public use without just compensation, if it substantially advances a legitimate state interest and does not deny an owner economically viable use of the owner's land. *Nollan v. California Coastal Comm'n*, [483 US 825, 835-36, 107 S Ct 3141, 97 L Ed 2d 677 (1987)]; *Keystone Bituminous Coal Assn. v. DeBenedictis*, 480 US 470, 495, 107 S Ct 1232, 94 L Ed 2d 472 (1987); *Agins v. City of Tiburon*, 447 US 255, 260, 100 S Ct 2138, 65 L Ed 2d 106 (1980)."

*prohibiting all development.* 120 L Ed 2d at 807.[13] The Supreme Court held that, where "the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with." 120 L Ed 2d at 820. In *dictum, Lucas* speculated in several footnotes about what a takings analysis might be in other circumstances:

> "When, for example, a regulation requires a developer to leave 90% of a rural tract in its natural state, it is unclear whether we would analyze the situation as one in which the owner has been deprived of all economically beneficial use of the burdened portion of the tract, or as one in which the owner has suffered a mere diminution in value of the tract as a whole. * * * In any event, we avoid this difficulty in the present case, since * * * [the statute at issue] left each of Lucas's beachfront lots without economic value." 120 L Ed 2d at 813-14 n 7.

> "Justice Stevens [in his dissent] criticizes the 'deprivation of all economically beneficial use' rule as 'wholly arbitrary', in that '[the] landowner whose property is diminished in value 95% recovers nothing,' while the landowner who suffers a complete elimination of value 'recovers the land's full value.' This analysis errs in its assumption that the landowner whose deprivation is one step short of complete is not entitled to compensation. Such an owner might not be able to claim the benefit of our categorical formulation, but as we have acknowledged time and again, '[t]he economic impact of the regulation on the claimant and * * * the extent to which the regulation has interfered with distinct investment-backed expectations' are keenly relevant to takings analysis generally. It is true that in at least *some cases* the landowner with 95% loss will get nothing, while the landowner with total loss will recover in full. * * * Takings law is full of these 'all or nothing' situations." 120 L Ed 2d at 815 n 8 (emphasis in original; citations omitted).

---

[13] In *Lucas*, the South Carolina Coastal Council chose not to contest at any level the landowner's allegation that his land had been rendered absolutely worthless. Because the allegation of worthlessness had not been contested in the state trial court, the state Supreme Court decided the case in favor of the Coastal Council on that assumption, and was reversed by the Supreme Court of the United States on the same assumption.

Petitioners here take that *dictum* as an invitation to challenge zoning where *less than all* beneficial use is taken.

The Supreme Court's speculation in *dictum* about what it might do in different circumstances falls far short of indicating that the Fifth Amendment provides greater protection to property owners than does Article I, section 18, where less than all beneficial use of property is taken. In *Lucas*, the state chose not to contest the land owner's allegation that his land had been stripped of *all economically beneficial use*. The test set forth in *Fifth Avenue* provides that there is no taking if the land owner retains "some substantial beneficial use" of the property. If all economically beneficial use had been taken, *a fortiori*, no substantial beneficial use remains.[14]

Petitioners argue that, in view of the purchase price of $33,000, their land's potential to produce $10,000 from timber sales does not leave them with a substantial beneficial use. Petitioners claim that exclusion of the purchase price from the analysis excludes the "investment-backed expectations" factor that is a part of federal taking analysis. *See Lucas v. South Carolina Coastal Council, supra,* 120 L Ed 2d at 815 n 8 (*dictum*) (extent to which regulation interferes with investment-backed expectations is relevant to taking analysis under Fifth Amendment). It is true that LUBA attached "no particular significance to the purchase price of the property in this case." *Dodd v. Hood River County, supra,* 22 Or LUBA at 732. However, LUBA's reason for doing so was not because LUBA concluded that investment-backed expectations are necessarily irrelevant, but because LUBA found that petitioners "at the very least had constructive notice at the time the property was purchased that approval of a dwelling on the property might be denied under the necessary and accessory to [forest use] standard." *Id.*

■ This court has never held that investment-backed expectations are part of any Article I, section 18, taking analysis. *See Suess Builders v. City of Beaverton, supra,* 294 Or at 259 n 5. Moreover, this court has questioned "whether

---

[14] This court has not defined what factors should be considered in analyzing regulatory takings claims under the Oregon Constitution. The *dictum* in *Lucas* went far beyond what the majority opinion in that case needed to say to decide the issues presented. *Lucas* involved the taking of *all* economic use.

such [investment-backed] expectations [, even if considered,] should take account of governmental power to change the laws." *Id. Even if* reasonable investment-backed expectations are a legitimate factor to be considered in takings analyses under Article I, section 18, an issue that we specifically do not decide here, we believe that the result in this case would be the same, because, under these circumstances, any investment-backed expectations petitioners may have had were not reasonable.

■ To be reasonable, investment-backed expectations must take into account the current state of the law, as well as the government's power to change the law. This court has noted,

> "Business invests with knowledge of such governmental power to make laws for its conduct, and the balancing of regulatory goals against their economic consequences is the daily stuff of politics rather than of litigation for 'just compensation.' " *Id.* at 259.

When petitioners in this case bought their land, it already was zoned for forest use and LCDC Goal 4 was in place and had been interpreted as limiting uses of such property to those necessary and accessory to a forest use. *Lamb v. Lane County*, 7 Or LUBA 137, 143 (1983). Throughout the state, counties were working to bring their ordinances into compliance with LCDC's goals. Meanwhile, where local unacknowledged land use regulations, such as the county's earlier zoning ordinance here, conflicted with the goals, land use decisions were to be made in compliance with LCDC goals. *Former* ORS 197.175(2); *see Alexanderson v. Polk County Commissioners*, 289 Or 427, 616 P2d 459 (1980) (illustrating process). We agree with LUBA that, when petitioners bought their land in 1983, they at the very least, had constructive notice as to the pending zoning limitations. It follows that any expectations that petitioners may have had that they had an absolute right to build a dwelling on their land in the future were not reasonable.

■■ We reject in any event petitioners' argument that a formula for determining whether some substantial beneficial use exists should be a simple comparison of purchase price to potential profits to be made from the allowed use at the time of acquisition of property. On these facts, a use that is capable

of producing $10,000 net profit from timber sales on land purchased for $33,000 certainly constitutes some substantial beneficial use. The evidence before LUBA, therefore, was sufficient for LUBA to find that petitioners retained some substantial beneficial use of their property.

■     We proceed to consider petitioners' argument that, because the purpose of the county's zoning ordinance is to secure public benefits, the restriction on the use of their property constitutes the taking of a "conservation easement" in their land. They posit that, because ORS 271.725 provides that a conservation easement may not be taken by eminent domain, the county's action violated ORS 271.725,[15] as well as Article I, section 18.

■     Petitioners assume that zoning for forest use must be carried out under the statutory scheme for acquisition of conservation easements provided by ORS 271.725. We disagree. There is nothing in the legislative history of that statute that indicates the legislature intended to affect zoning laws in the manner suggested by petitioners.[16] Were such a result intended, we believe it certainly would be discernible from legislative history, if not from the statute itself. We therefore reject petitioners' argument that the county's zoning created a conservation easement over their land or that ORS 271.725 places implicit limitations on the county's ability to enforce its zoning ordinances.

For purposes of establishing that a conservation easement has been taken, petitioners rely on a passage in *Lucas v. South Carolina Coastal Council, supra*, 120 L Ed 2d at 814:

> "[A]ffirmatively supporting a compensation requirement, is the fact that regulations that leave the owner of land without economically beneficial or productive options for its use * * * carry with them a heightened risk that private property is being pressed into some form of public service under the guise of mitigating serious public harm."

---

[15] Petitioners do not argue that they are entitled to any specific relief for a violation of ORS 271.725.

[16] ORS 271.725 was passed in 1983. Or Laws 1983, ch 642, §§ 1, 2. The legislative history does not suggest that its provisions were intended to apply to zoning changes. *See* SB 197, Senate Judiciary Committee, February 2, 1983, Tapes 28A, 29A; Senate Judiciary Committee, March 10, 1983, Tape 52A.

Petitioners' reliance on that passage is misplaced. Whereas the regulation at issue in *Lucas* required that the land be left in its natural state, the county's zoning ordinance here does not require that petitioners' land be left substantially in its natural state; numerous forest and agricultural uses are allowed within the F-1 zone. Because of the difference between the facts in *Lucas* and those found here, we agree with the Court of Appeals that petitioners' attempt to recharacterize the county's action as the taking of a conservation easement should be rejected. *See Dodd v. Hood River County, supra,* 115 Or App at 142.

In summary, we conclude that LUBA's findings of fact are supported by substantial evidence in the record as a whole. We agree with LUBA's conclusions that petitioners' land has not been "taken" within the meaning of Article I, section 18, and that the county's action did not create a "conservation easement" in petitioners' land. Moreover, we have considered all of petitioners' assignments of error and every argument thereunder examining the relevant provisions of state law as they existed on the date that petitioners acquired their land, and we conclude that LUBA's order and the Court of Appeals decision were correct.

The decision of the Court of Appeals is affirmed.