Mr. Visness asks us to award attorney's fees, if appropriate, pursuant to 28 U.S.C. § 2412(d)(1)(B) or Cal.Civ.Proc.Code § 1021.5. Neither statute is applicable, and we therefore deny Mr. Visness's request.

The judgment of the district court is AFFIRMED.

Hans **HOECK**, Plaintiff–Appellant,

v.

**CITY OF PORTLAND, a municipal corporation, Defendant–Appellee.**

No. 93–35691.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 1994.

Decided June 12, 1995.

As Amended July 10, 1995.

Thomas P.E. Herrmann, Gleaves, Swearingen, Larsen, Potter, Scott & Smith, Eugene, OR, for plaintiff-appellant.

James Esterkin and Marc Zwerling, Winfree, Fearey & Zwerling, Portland, OR, for plaintiff-appellant (on the briefs).

Tracy Pool Reeve, Deputy City Atty., Portland, OR, for defendant-appellee.

Before: FLETCHER, NELSON, and RYMER, Circuit Judges.

FLETCHER, Circuit Judge:

Plaintiff Hans Hoeck appeals from a summary judgment for the defendant City of Portland (the "City"). Hoeck argues on appeal that the district court erred because the demolition of his building constitutes a violation of substantive due process and is a taking under Oregon law. Hoeck also argues that he is entitled to a declaration under 28 U.S.C. § 2201 that he is not liable for demolition costs. We have jurisdiction, 28 U.S.C. § 1291, and affirm.

## FACTS

Hoeck was the owner of the Bridgeport Hotel, a vacant six-story building located in Portland, Oregon. During 1984 and 1985, Hoeck made plans to renovate the Bridgeport and to add four additional stories, converting it into a ten-story office building. After obtaining a financial commitment from a lender and a building permit from the City, Hoeck commenced the renovation project. However, shortly after the project began, the City suspended construction pending a further review of his plan. About six months later, Hoeck was permitted to recommence work. Shortly thereafter, on March 6, 1986, Hoeck's financing was discontinued due to the insolvency of his lender, and he was never able to obtain replacement financing. Hoeck expended substantial sums—approximately $1 million—in connection with the project.

More than three years later, on May 15, 1989, the City took its first action against the Bridgeport. On that date, pursuant to the Portland City Code ("PCC"), the Bureau of Buildings filed a complaint with the Code Hearings Officer ("CHO") pursuant to authorization under PCC §§ 24.55.250 and 24.55.300: It alleged that the Bridgeport was an "abandoned" structure in violation of PCC § 24.15.020. Under the PCC, an abandoned structure is defined as "a structure that has been vacant for a period in excess of six months, or any period less than six months when a vacant structure or portion thereof constitutes an attractive nuisance or hazard to the public." PCC § 24.15.020. The complaint also alleged that the Bridgeport was a dangerous structure under PCC § 24.15.060.

Administrative hearings were held before the CHO on five occasions. During the course of these hearings, the City submitted evidence that the Bridgeport was attracting transients and drug users, contained substantial amounts of debris, and had numerous structural flaws due to its incomplete state. By the time the last hearing was held on October 4, 1991, the Bridgeport was no longer classified as a "dangerous" building. It had been secured with steel shutters, was structurally sound, and not in danger of collapse. Nevertheless, the CHO ordered the Bridgeport demolished on the grounds that it was an "abandoned" structure under PCC § 24.15.020.[1] The CHO's supplemental order, issued on October 4, 1991, further stated:

> The structure ... in its current partially complete and gutted condition, remains a visual blight upon the surrounding neighborhood.

> There is nothing in the record of this proceeding that would lead me to believe that further delay in the demolition of this structure would do anything other than inflict this ugly and potentially hazardous building on the neighborhood and the city for some additional, indefinite time.

1. The Portland City Code provides that abandoned or dangerous structures may be abated pursuant to PCC §§ 24.55.250 and 24.55.300, the latter of which empowers the CHO to order demolition.

On two occasions, Hoeck sought review of the demolition order in Multnomah County Circuit Court. Both times the orders were held to be enforceable. On July 27, 1992, the City began demolition and completely removed the structure from the property.

Hoeck filed his action in federal court on January 26, 1993. His complaint set forth three causes of action: 1) an action under 28 U.S.C. § 1983 claiming a violation of substantive due process; 2) a claim for declaratory relief under 28 U.S.C. § 2201 that because the demolition was in violation of his constitutional rights, the City could not assess its demolition costs against him; and 3) a state law inverse condemnation claim based on the district court's pendent jurisdiction, 28 U.S.C. § 1367. Each party submitted a summary judgment motion on all the claims. The district court denied Hoeck's motion, granted the City's, and dismissed Hoeck's complaint. This timely appeal followed.

## STANDARDS OF REVIEW

■ We review de novo whether the district court had jurisdiction. *Carson Harbor Village Ltd. v. City of Carson,* 37 F.3d 468, 474 (9th Cir.1994); *Christensen v. Yolo County Bd. of Supervisors,* 995 F.2d 161, 163 (9th Cir.1993).

■ We review de novo the district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party to determine whether any genuine issues of material fact exists and whether the district court correctly applied the relevant substantive law. *Christensen,* 995 F.2d at 163.

"[W]e may affirm 'on any basis fairly supported by the record.'" *Janicki Logging Co. v. Mateer,* 42 F.3d 561, 564 (9th Cir.1994) (quoting *City of Las Vegas v. Clark County,* 755 F.2d 697, 701 (9th Cir.1985)).

## JURISDICTION

Although the City challenged jurisdiction in the district court, neither party does so on appeal. We must nevertheless determine *sua sponte* whether we have jurisdiction. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990) ("federal courts are under an independent obligation to examine their own jurisdiction"); *Harris v. Provident Life & Accident Ins. Co.,* 26 F.3d 930, 932 (9th Cir.1994). We review the existence of subject matter jurisdiction in the district court de novo. *Allah v. Superior Court of California,* 871 F.2d 887, 890 (9th Cir.1989).

The district court determined that it had federal question jurisdiction over the claim for declaratory relief and the substantive due process claim, 28 U.S.C. § 1331, and pendent jurisdiction over the state takings claim, 28 U.S.C. § 1367. We examine the jurisdiction as to each of these claims. We conclude that we have jurisdiction over the substantive due process claim and the state takings claim. The jurisdiction over the claim for declaratory relief is unclear and its resolution convoluted. Since we find the claim meritless in any event, we do not decide whether we have jurisdiction over it.

## OVER SUBSTANTIVE DUE PROCESS CLAIM

■ The plaintiff contends that the district court properly based its jurisdiction on his claim that the City violated his right to substantive due process under the Fourteenth Amendment. We agree.

The Supreme Court has set forth the general rule that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994) (plurality) (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). At first blush, the substantive due process claim would appear to be precluded by a more specific claim based on the Takings Clause. However, in *Sinaloa Lake Owners Association v. City of Simi Valley,* 882 F.2d 1398, 1408–09 n. 10 (9th Cir.1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990), we held that *Graham* does not bar a companion substantive due process claim al-

leging that "the government has used its power in an abusive, irrational or malicious way." *Id.* at 1408–09 n. 10; *see also Bateson v. Geisse,* 857 F.2d 1300, 1303 (9th Cir.1988) (finding that substantive due process claim is not subject to exhaustion requirement of taking claim). Thus, we must determine whether Hoeck's section 1983 claim falls within the *Sinaloa* exception to *Graham.*

It is only with some difficulty that we are able to discover a substantive due process claim in Hoeck's pleadings. The words "substantive due process" do not appear in Hoeck's Complaint.[2] It was only after the City argued that the district court lacked subject matter jurisdiction that Hoeck first breathed the words "substantive due process" and characterized his claim as challenging the City's authority to "demolish the Bridgeport Hotel *solely* because of its unoccupied status irrespective of the City's motives, the City's procedures or whether the City pays compensation." *Plaintiff's Response to Defendant's June 15, 1993 Memorandum,* at 3. On appeal, Hoeck did not argue in terms of substantive due process until his reply brief, apparently triggered by the City's mention that it had challenged jurisdiction below. In the brief, he asserted that his "substantive due process claim is based on the government's failure to treat a citizen with some minimal standard of rationality and fairness."

While the claim is certainly not artfully asserted in the complaint, we read it charitably, and since the City did not appeal the district court's finding of jurisdiction, we do not fault Hoeck's delay in addressing it directly until his reply. We somewhat reluctantly conclude that Hoeck advances a claim of substantive due process sufficient to fall within the *Sinaloa* exception. Therefore, we

conclude that we have subject matter jurisdiction over this claim.

## OVER PENDENT STATE TAKINGS CLAIM

■ We next consider whether the district court properly exercised pendent jurisdiction over the state inverse condemnation claim. We conclude that it did.

■ District courts have discretion to hear pendent state claims where there is a substantial federal claim arising out of a common nucleus of operative fact. 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). This is a "doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). The court must weigh "considerations of judicial economy, convenience and fairness to the litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. However, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* If "state issues substantially predominate, ... the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Id.,* 383 at 726–27, 86 S.Ct. at 1139.

During the course of summary judgment proceedings, the City moved to dismiss the inverse condemnation claim. The parties briefed the issue of whether pendent jurisdiction should be exercised over this claim. The

**2.** In Count 1 of his complaint, Hoeck alleges as follows:

The City's demolition of the Bridgeport Hotel under color of its Ordinance was undertaken with the intention to deprive, and has deprived, Hoeck of his rights, privileges and immunities secured by the Constitution of the United States, and of his property without due process of law.

As it was applied to Hoeck, the Ordinance is in violation of Hoeck's rights under the Fifth and Fourteenth Amendments of the United

States Constitution and therefore unenforceable for at least the following reasons:

\*   \*   \*   \*   \*   \*

● the initial notice of hearing failed to inform Hoeck that the City sought to demolish the Bridgeport Hotel solely because it was unoccupied, and

● Schatzer [the CHO] lacked authority under the Ordinance to order the demolition of the Bridgeport Hotel solely because it was unoccupied.

Complaint ¶¶ 29–30.

district court found that it had jurisdiction over the federal substantive due process claim and denied the City's motion to dismiss the pendent state claim.

We defer to the discretion of the district court, recognizing that "the district court is in the best position to judge the extent of resources invested in a case." *Schneider v. TRW, Inc.*, 938 F.2d 986, 993–94 (9th Cir. 1991).

## OVER REQUEST FOR DECLARATORY RELIEF

Hoeck's other claim is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, and seeks a declaration that he is not liable for the demolition costs because the demolition was in violation of his substantive due process rights. He asserts that jurisdiction is proper here based on 28 U.S.C. § 1331. The nature of declaratory relief often makes the inquiry into the propriety of jurisdiction difficult. Accordingly, because we find the merits of this claim insubstantial, *see* Part II of the Discussion, we decline to resolve the jurisdictional question in this case. *Lee v. City of Beaumont*, 12 F.3d 933, 937 (9th Cir.1993); *Clow v. U.S. Dep't of Housing and Urban Dev.*, 948 F.2d 614, 616 n. 2 (9th Cir.1991) ("[W]here an appeal presents difficult jurisdictional questions, we may forego the resolution of these issues if the merits of the appeal are insubstantial.").

## DISCUSSION

### I. SUBSTANTIVE DUE PROCESS CLAIM

■ Hoeck claims first that the demolition of his building without paying compensation violated his substantive due process rights. We disagree.

■ Viewing the record in the light most favorable to the plaintiff, we must determine whether a reasonable jury could find that the City's action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); *see also Halverson v.*

*Skagit County*, 42 F.3d 1257, 1261–63, *amended*, (9th Cir.1994). Substantive due process provides considerable protection for fundamental rights. *Albright v. Oliver*, —— U.S. ——, ——, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994). Here, however, because the plaintiff's claim is not based on a fundamental right, "we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." *Halverson*, 42 F.3d at 1262 (quoting *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 66 (9th Cir.1994)) (emphasis in original); *see also Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994).

We agree with the district court that the City's demolition of the plaintiff's vacant building had a rational basis. The City had ample authority under the Portland City Code to abate abandoned buildings. *See* PCC § 24.44.250(h)(1) ("Abandoned structures as defined in this Chapter shall be abated pursuant to the provisions of Sections 24.55.250 or 24.55.300."). We also agree with the district court that the City could rationally conclude that there is "a greater danger to the public from unoccupied substandard buildings than from occupied ones." *Shaffer v. City of Winston*, 33 Or.App. 391, 576 P.2d 823, 824 (1978). Indeed, even the plaintiff acknowledges that the defendant had the authority, under its police power, to raze the Bridgeport. Finally, because Oregon state law provides a procedure for pursuing compensation through an inverse condemnation, there is nothing clearly arbitrary and unreasonable about the City's failure *sua sponte* to pay compensation. *Halverson*, 42 F.3d at 1262–63.

We conclude that as matter of law, no reasonable jury could find that the City has acted in an clearly arbitrary and unreasonable manner. Accordingly, we affirm the district court's grant of summary judgment for the defendant on the plaintiff's substantive due process claim.

## II. REQUEST FOR DECLARATORY RELIEF

Hoeck's claim for declaratory relief rests on his contention that he is not liable for demolition costs because the uncompensated demolition violated his substantive due process rights. We have determined that the City did not violate Hoeck's substantive due process rights. Consequently, we find that Hoeck's claim for declaratory relief is likewise without merit.

## III. STATE LAW TAKING CLAIM

Hoeck's final claim is that the district court erred by ruling that the City's action did not constitute a taking under Oregon law. Hoeck contends that the demolition of the Bridgeport Hotel entitles him to compensation in the equivalent of an inverse condemnation action. Hoeck argues that compensation is due because the demolition constituted a physical invasion of his property, denied him all economically viable use of his property, and failed to advance a legitimate state interest sufficient to outweigh the burden placed on his property interests. We find that these claims lack merit and affirm the district court.

Article I, section 18 of the Oregon Constitution provides that "[p]rivate property shall not be taken for public use ... without compensation." "The basic thrust of this constitutional provision is generally the same as the 'takings' provision of the Fifth Amendment to the federal constitution." *Ferguson v. City of Mill City*, 120 Or.App. 210, 852 P.2d 205, 213 (1993) (citing *Suess Builders v. City of Beaverton*, 294 Or. 254, 656 P.2d 306, 310 n. 5 (1982); *Cereghino v. State Highway Commission*, 230 Or. 439, 370 P.2d 694 (1962)). Oregon law is identical to Fifth Amendment "physical" takings law. *Id.* Thus, while Oregon law ultimately controls, we rely to some extent on federal takings law to resolve Hoeck's state inverse condemnation claim.

### A. *Physical Taking*

■ Hoeck argues first that the demolition of his building is a physical taking that entitles him to compensation. We disagree.

■ An otherwise valid exercise of the police power constitutes a taking for which compensation is due if the owner suffers a permanent, physical occupation of the property. *Yee v. Escondido*, 503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992); *Lucas v. South Carolina Coastal Council*, —— U.S. ——, ——, 112 S.Ct. 2886, 2900, 120 L.Ed.2d 798 (1992); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427–28, 102 S.Ct. 3164, 3171–72, 73 L.Ed.2d 868 (1982); *Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall.) 166, 20 L.Ed. 557 (1871); *Ferguson*, 852 P.2d at 207. Physical invasions have been found where the government interferes with the owner's "right to exclude." *See, e.g., Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (public access to pond); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (public easement to beach); *Loretto*, 458 U.S. at 427–28, 102 S.Ct. at 3171–72 (installation of cable); *Pumpelly*, 80 U.S. at 166 (flooding); *Hawkins v. City of La Grande*, 315 Or. 57, 843 P.2d 400 (1992) (one-time flooding). However, the state may enter property to enforce a valid land-use regulation and destroy the offending property. This does not amount to a physical occupation even where the government's activity has a permanent effect. *See Miller v. Schoene*, 276 U.S. 272, 278, 48 S.Ct. 246, 247, 72 L.Ed. 568 (1928) (permitting state entomologist to enter property and destroy diseased trees without affecting a taking); *see also Bowditch v. Boston*, 101 U.S. 16, 18–19, 25 L.Ed. 980 (1880) (denying compensation to owners whose houses were destroyed to prevent spread of fire); *Shaffer*, 576 P.2d at 824–25 (finding that city may enter to demolish substandard vacant building without compensating owner).

The demolition of the Bridgeport Hotel was not a physical taking for public use. To the contrary, it was a restriction on the use of the property to maintain an abandoned structure. The Portland Regulations did not interfere with Hoeck's right to exclude. Indeed, if Hoeck had obeyed the City's order to repair the structure and put it to use, it would not have been necessary for the City to enter his property to enforce its regula-

tions. *Cf. Yee,* 503 U.S. at 526–28, 112 S.Ct. at 1528 ("[T]he government affects a physical taking only when it *requires* the land owner to submit to the physical occupation of his land.") (emphasis added); *Ferguson,* 852 P.2d at 207 (same). Because the City's presence was temporary, and its entry avoidable, Hoeck has suffered no permanent physical invasion of his ownership interest in his property. Accordingly, we find his claim of a physical taking to be without merit.

### B. *Regulatory Taking*

■ Hoeck argues next that the demolition was a regulatory taking because the City's action denied him all economically viable use of his property and failed to advance a legitimate state interest sufficient to outweigh the burden placed on his property interests. We disagree.

■ Under Oregon law, "[a] property owner has a high threshold to surmount in order to obtain compensation from the government for losses occasioned by a regulation of property that serves a legitimate governmental objective." *Benson v. City of Portland,* 119 Or.App. 406, 850 P.2d 416, 420 (1993), *rev. denied,* 318 Or. 24, 862 P.2d 1304 (1993). A city may wholly exclude a particular use of property if it has a rational basis for doing so, and "aesthetic concerns alone may warrant an exercise of the police power." *Oregon City v. Hartke,* 240 Or. 35, 400 P.2d 255, 262 (1965). Furthermore, to state a cause of action for inverse condemnation, Hoeck must show that his property was taken for a public use. *Willard v. City of Eugene,* 25 Or.App. 491, 550 P.2d 457, 458 (1976); *cf.* Jeb Rubenfeld, *Usings,* 102 Yale L.J. 1077 (1992) (arguing for "usings" requirement in federal takings law).

In the past, demolition cases have not been found to constitute a taking under Oregon law. In *Willard v. City of Eugene,* an Oregon Court of Appeals held that a demolition is not a taking for public use because the city does not acquire any right or thing for public use by its action. 550 P.2d at 459. In *Shaffer v. City of Winston,* the court held that the demolition of a vacant or abandoned substandard building is within a municipality's police power and does not constitute a

compensable taking. 576 P.2d at 825. "The general rule is that a municipality in the exercise of its police power may, without compensating the owner, destroy a building that threatens the public safety where, after reasonable notice and opportunity, the owner fails to remedy the dangerous condition." *Id.*

More recently, in *Dodd v. Hood River County,* 317 Or. 172, 855 P.2d 608 (1993), the Oregon Supreme Court clarified the proper analysis under Oregon law for regulatory takings. The court addressed whether a zoning regulation prohibiting the construction of a family dwelling in a forestry zone constituted a taking in violation of the Oregon Constitution and concluded that it did not. The *Dodd* court first determined that zoning regulations that limit the uses of property do not constitute a "taking of private property for public use." *Id.* 855 P.2d at 614. The court acknowledged the possibility that the Fifth Amendment may afford greater protection against takings, *id.,* and went on to apply the following test under Oregon law:

> Where a zoning designation allows a landowner *some substantial beneficial use* of his property, the landowner is not deprived of his property nor is his property "taken." Such a loss, if any, is "damnum absque injuria."

*Id.* (quoting *Suess Builders,* 581 P.2d at 50 (emphasis added in original)). The *Dodd* court explicitly declined to make a landowner's "investment-backed expectations" part of a regulatory takings analysis. *Id.* However, the court concluded that such expectations, if relevant, must be reasonable to support a claim for a taking. That is, reasonable "investment-backed expectations must take into account the current state of the law [at the time the property is purchased], as well as the government's power to change the law." *Id.* at 616.

Applying these rules to the case at hand, we hold that the City's demolition of the Bridgeport is not a regulatory taking under Oregon law. As *Shaffer,* 576 P.2d at 825, and *Willard,* 550 P.2d at 458–59, demonstrate, the City acts well within the scope of

its police power by removing abandoned structures. Furthermore, the demolition did not deprive Hoeck of all economically beneficial use of his property. *See Dodd,* 855 P.2d at 616. Hoeck argues that the demolition completely destroyed his building—an indisputable claim. However, the lot remains and is suitable for appropriate development. Finally, the regulation has not interfered with Hoeck's reasonable, investment-backed expectations. *See id.* Under the law at the time Hoeck took title, he had no right to use his property to maintain an abandoned structure. *Lucas,* —— U.S. at ——, 112 S.Ct. at 2895; PCC § 24.55.100; PCC § 24.55.250(h)(1); PCC § 24.55.300. Therefore, even if Hoeck's property interest is narrowed to include only his building, he suffered no taking of an existing property interest and no interference with his reasonable expectations.

We conclude that Hoeck's claim for a regulatory taking under Oregon law is without merit.

AFFIRMED.